AO106(Rev.5/85) Affidavit for Search Warrant

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

In the Matter of the Search of
(Name, address or brief description of person, property, or premises to be searched)

**2710 29th STREET, SE, APT. #228**
**WASHINGTON, DC**

## APPLICATION AND AFFIDAVIT FOR SEARCH WARRANT

CASE NUMBER:

(Further described below)

I   DANIEL SPERCO   being duly sworn depose and say:

I am a(n) Special Agent with the United States Secret Service and have reason to believe
            (Official Title)

that ☐ on the person of or ☒ on the property or premises known as   (name, description and or location)

**2710 29th STREET, SE, APT. #228 - WASHINGTON, DC**
See Attached Affidavit

in the District of Columbia, there is now concealed a certain person or property, namely (describe the person or property to be searched)

See the affidavit submitted in support of the application for this warrant which are incorporated herein by reference.

which is (state one or more bases for search and seizure set forth under Rule 41(b) of the Federal Rules of Criminal Procedure)
evidence and instrumentalities of crime and other contraband and property designed or intended for use as a means of committing a criminal offense.

concerning a violation of Titles 18 United States Code, Section(s) 1343.  The facts to support a finding of Probable Cause are as follows:

SEE ATTACHED AFFIDAVIT HEREIN INCORPORATED BY REFERENCE AS IF FULLY RESTATED HEREIN

Continued on the attached sheet and made a part hereof.    ☒ YES   ☐ NO

Tejpal Chawla
Fraud and Public Corruption/5th Floor
(202) 353-2442

Signature of Affiant
DANIEL SPERCO, Special Agent
United States Secret Service

Sworn to before me, and subscribed in my presence

at Washington, D.C.

_____
Date

_____
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

# SEARCH WARRANT
# AFFIDAVIT

1. Your Affiant, Daniel Sperco, has been a member of the United States Secret Service for 5 years and 11 months. I am currently assigned to The Washington Field Office, Metropolitan Area Fraud Task Force.

2. I have been employed by the United States Secret Service (USSS) as a Special Agent since December 2001. I have received training in general law enforcement and in criminal investigations at the Federal Law Enforcement Training Center and the J.J. Rowley Training Center for the Secret Service. I am currently assigned to the Metro Area Fraud Task Force, Washington Field Office, Washington, D.C. My duties include, but are not limited to, conducting fraud investigations, including access device fraud and identity theft, along with preparation, presentation and service of criminal complaints, search warrants and arrest warrants.

3. During the course of your affiant's professional experience in law enforcement, I have had the opportunity to interview numerous defendants, witnesses, and victims regarding financial & fraud related crimes. I have also participated in numerous arrests and the execution of search warrants. In my experience and training, I have learned that suspects who commit white collar crime, particularly fraud in Washington, D.C., also keep other items related to their crimes, including documents, additional credit cards, additional identifications and paperwork relating to the acquisition and disposition of checks and related items used in financial crimes and fraud. I have also learned that suspects keep instruments related to financial crimes and fraud and their accessories secreted within their residence for extended periods of time due to their ease of storage, their potential to be utilized to track inventories, deliveries, profits and financial fruits of such fraud, and their use in furthering future fraud schemes involving the same or different victims. Additionally I have learned that suspects usually keep fruits of criminal activity on their person, within their residence, computers, cell phones, safes, cars, and other areas accessible to them. In addition to this, fraud suspects utilizing identity theft

1

as part of their schemes have been known to store lists of names and information used for identity theft so they can be used in the future. Suspects of identity theft often use computers and the internet to perpetrate fraudulent transactions, create false documents and fraudulent accounts, and monitor the progress of shipments delivering the fruits of their crime. In my experience, fraud suspects are often motivated by financial need, drug addiction, or greed. It is not unusual for drug addicts who obtain valuable goods or items by fraud, to then sell or pawn the same items for cash (often below their true value) in order to purchase drugs.

4. Based on your affiant's knowledge, training, and experience, including the experience of other agents with whom the affiant has spoken, your affiant knows that computer files or remnants of such files can be recovered months or even years after they have been downloaded onto a hard drive, deleted or viewed via the Internet. Electronic files downloaded to a hard drive can be stored for years at little or no cost. Even when such files have been deleted, they can be recovered months or years later using readily-available forensics tools. When a person "deletes" a file on a home computer, the data contained in the file does not actually disappear; rather, that data remains on the hard drive until it is overwritten by new data. Therefore, deleted files, or remnants of deleted files, may reside in free space or slack space - that is, in space on the hard drive that is not allocated to an active file or that is unused after a file has been allocated to a set block of storage space - for long periods of time before they are overwritten. In addition, a computer's operating system may also keep a record of deleted data in a "swap" or "recovery" file. Similarly, files that have been viewed via the Internet are automatically downloaded into a temporary Internet directory or "cache."

## **PURPOSE**

This affidavit is presented in support of a search warrant of the premises described herein based upon the affiant's belief that there is probable cause that evidence of one or more violations of Title 18 U.S.C. § 1343 (Wire Fraud) may be found therein.

## PREMISES TO BE SEARCH

2710 29th St., SE Apt. 228, Washington, District of Columbia is described as a garden style apartment brick building, red in color, with a grey/off-white wooden door and the numbers B228 affixed.  2710 29th St, SE Apt. 228, also has a storage unit located in the basement**.**  The storage unit is a separate room located on the basement level of the apartment building and has the numbers 228 affixed to the door.

## BACKGROUND

1. On or about July 2007 multiple Complainants reported that fraudulent accounts were being opened at the Home Shopping Network, a retail business based in St. Petersburg, FL, that sells merchandise through television programs, the telephone and the internet.  The Home Shopping Network operates its business, in part, through call centers located in St. Petersburg FL, Roanoke VA, Nashville TN, Omaha, NE as well as work at home representatives that take calls.  In addition the Home Shopping Network operates an outsourced call center outside the United States in the Philippines. There are no call centers in the District of Columbia. As part of its business, the Home Shopping Network monitors and electronically records the phone numbers of many of the persons who call its call centers to open accounts or place orders.  The Home Shopping Network confirmed that over 50 separate accounts- each account in the name of a different person- had been opened or accessed by a person calling from the same telephone number 202-581-5490.  The caller who opened each account knew and conveyed the correct date of birth and social security number for the person in whose name the account was opened.  For each account, the Home Shopping Network caller identification database identified that a person called to open each of these accounts and/or order items on these accounts from the same telephone number – that being 202-581-5490.  In each case, the person who opened the account was provided with a line of credit to purchase Home Shopping Network merchandise, and orders were placed on the account.  While each account was opened with correct date of birth and social

security information, almost all of the accounts were opened by person(s) who provided false contact phone numbers to the Home Shopping Network. Some of the phone calls from 202-581-5490 to the Home Shopping Network were recorded, and the gender of the person calling from 202-581-5490. The affiant has listened to many of these recordings, and the person talking to the Home Shopping Network representative from 202-581-5490 consistently had a male voice, and in some cases it sounded as if the person on the phone was a man attempting to speak in a woman's voice when the name on the account at issue was a woman's name.

2. The Home Shopping Network accounts at issue (more than fifty) were opened between December, 2003 and October, 2007. Dozens of the items of merchandise were ordered on these accounts, and most of them were addressed to residences in or near the Naylor Gardens housing complex in Southeast Washington, D.C. A number of the items that were shipped and delivered to this area include: vacuum cleaners, jewelry, necklaces, bracelets, watches, tools, guitars and music equipment, computers, air purifiers, DVD players, and, exercise equipment.

3. The Home Shopping Network has concluded that the accounts at issue are the product of fraud. Of the over 50 separate individuals in whose name an account was opened with or associated with 202-581-5490, the undersigned has communicated directly with 24 of these persons. 23 of the 24 persons has confirmed that they were unaware of these accounts, that they did not open an account at the Home Shopping Network or authorize any person to do the same, and that any orders made on such an account would be fraudulent. The 24th person stated that he previously had an account with the Home Shopping Network but that he had not accessed it for some time. This 24th person stated that it did not authorize anyone to access its account, make any purchases in its name, or authorize anyone to place orders on the account. This person also indicated that it was unaware of any person having the phone number 202-581-5490, and that any recent orders on this account would be fraudulent. Based upon the foregoing, the affiant

believes that multiple violations of 18 U.S.C. §1343 (Wire Fraud) have been committed.

### INVESTIGATION

4. Verizon phone records indicate that 202-581-5490 is a land line telephone number that has been registered to Latoya Jones-Davis of 2710 29th St., SE Apt 228, Washington, DC 20020 from at least July 2003 to date. 2710 29th Street, SE is located in the Naylor Garden housing complex in the District of Columbia. According to the Marriage Bureau of the District of Columbia, Latoya Jones-Davis married Robert George Davis (herein after "**DAVIS**") on October 19, 2002 and they remain married. Home Shopping Network reports that neither Latoya Jones-Davis nor DAVIS have ever established a legitimate account with the Home Shopping Network. On several occasions, fraudulent orders on the above-mentioned Home Shopping Network accounts were shipped to 2710 29th St., SE Apt 228B Washington, DC 20020.

5. The undersigned has reviewed the Metropolitan Police Department Pawn Shop database ("Pawn Shop database"), which is an electronic compilation of required reports created by area pawn shops in Washington, D.C., Maryland and Virginia. Pawn shops in the District of Columbia, Maryland, and Virginia are required, among other things, to identify persons pawning items by examining their identification, obtain address or contact information from the person pawning the item, and to itemize the items pawned. According the Pawn Shop database, between March 2003 and October 30, 2007, hundreds of items were pawned by "Robert Davis" in the District of Columbia and Maryland. Over two hundred of these records appear to relate to DAVIS, as the entries identify "Robert Davis" as having a local address' of 5057 6th Place, NE, Washington, D.C., 5057 6th Street, NE, Washington, D.C. and 5210 Blaine Street, NE, Washington, D.C. DAVIS is associated with all of these addresses: in a District of Columbia, Department of Motor Vehicles record from December 20, 2006, DAVIS listed 5057 6th Place, NE, Washington, DC 20017 as his home address, and on a U.S. Postal Service,

    Notification of Personnel Action, from June 17, 1992, DAVIS listed 5210 Blaine St., NE, Washington, DC 20019 as his mailing address.

6. According to the Pawn Shop database, among the items that DAVIS has pawned since 2003 include: jewelry, watches, electronics, cameras, vacuum cleaners, clothing, tool sets, air purifiers, cookware, bedding, guitars, music equipment, electric irons, floor washing equipment, luggage, and body scales. Since 2003, pawn brokers have paid DAVIS over $24,000 in cash for pawning these various items.

7. On 12/04/06 at 2034 hours, an individual called a Home Shopping Network call-center outside the District of Columbia and set up an account, # 733292601, in the name of E.K. (Victim #1), and did so by providing Victim #'1's actual date of birth and social security number. Home Shopping Network records indicate that the person who opened the account and/or ordered items on the account called the Home Shopping Network from telephone number 202-581-5490 and provided a false contact phone number for Victim #1. Between 12/4/06 and 12/20/06 five items were ordered on this account from the Home Shopping Network. All five of these items were shipped in the name of "Marvin Koenig," at 2906 Naylor Rd, SE Apt B228, Washington, DC 20020. This address is located in the Naylor Gardens apartment complex, in Washington, D.C., however, no apartment with that number exists at this address. Two of these items ordered on 12/4/06 from the Home Shopping Network were a Roomba vacuum cleaner and a Scooba floor washing kit. According to the Pawn Shop Database, on 12/14/06, "Robert Davis" of 5057 6th St, NE Washington, DC pawned a ROOMBA vacuum and a SCOOBA floor washing robot kit at Famous Pawn-Wheaton, 11129 Viers Mill Rd, Wheaton, MD. On October 11, 2007 Victim #1 was contacted by law enforcement personnel and reported that he did not open, nor did he authorize anyone, to open an account with the Home Shopping Network in this name. Victim #1 also confirmed that he does not know anyone who resides at 2906 Naylor Road, SE, in the District of Columbia.

6

8. On 1/22/07 at 1925 hours, an individual called a Home Shopping Network call center outside the District of Columbia and did an account takeover of account # 571287739, in the name of F.A. (Victim #2). Victim #2 had a pre-existing account with the Home Shopping Network, but the account was dormant. The person calling took over the account by providing Victim #2's actual date of birth and social security number. Home Shopping Network records indicate that the person who changed the account and/or ordered items on the account called the Home Shopping Network from telephone number 202-581-5490 and provided a false contact phone number for Victim #2. Between 1/22/07 and 2/17/07 nineteen orders were placed on this account from the Home Shopping Network. Fifteen of the nineteen items were shipped in the name of "Kenneth Arafat", at 2808 Naylor Rd., SE, Apt A115, Washington, DC 20020. This address is located in the Naylor Gardens apartment complex, in Washington, DC, however, no apartment with that number exists at this address. Five of these items ordered between 1/22/07 and 2/17/07 were two 14 karat ladies necklaces, two 14 karat ladies bracelets, and a Bulova watch. According to the Pawn Shop Database, between 2/16/07 and 3/08/07, "Robert Davis", 5057 6th St., NE Washington, DC pawned five items fitting this description at Famous Pawn-Wheaton, 11129 Viers Mill Rd, Wheaton, MD. On November 27, 2007 Victim #2 was contacted by law enforcement personnel and reported that he did not re-open, nor did he authorize anyone, to access, or take over his account with the Home Shopping Network. Victim #2 also confirmed that he does not know anyone who resides at 2808 Naylor Rd, SE, in the District of Columbia.

9. On 3/05/07 at 1445 hours, and individual called a Home Shopping Network call center outside the District of Columbia and set up an account, # 739728913, in the name K.P. (Victim #3), and did so by providing Victim #3's actual date of birth and social security number. Home Shopping Network records indicate that the person who opened the account and/or ordered items on the account called the Home Shopping Network from telephone number 202-581-5490 and provided a false contact number for Victim #3. On 3/05/07 two items were ordered on this account

from the Home Shopping Network. Both items were shipped in the name "Jacqueline Price", at 2710 29th St., SE Apt B230, Washington DC, 20020. This address is located in the Naylor Gardens apartment complex, in Washington, DC, however, no apartment with that number exists at this address. On August 27, 2007 Victim #3 was contacted by law enforcement personnel and reported that she did not open, nor did she authorize anyone, to open an account with the Home Shopping Network in this name.

10. On 5/26/07 at 1747 hours, an individual called a Home Shopping Network call center outside the District of Columbia and set up an account, # 743649535, in the name M.S. (Victim #4), and did so by providing Victim #4's actual date of birth and social security number. Home Shopping Network records indicate that the person who opened the account and/or ordered items on the account called the Home Shopping Network from telephone number 202-581-5490 and provided a false contact number for Victim #4. On 5/26/07 two items were ordered on this account from the Home Shopping Network. Both items were shipped in the name "Robert Davis", 5057 6th Pl, NE, Washington, DC 20017. DAVIS reported this address as his home address in a 2006 DC DMV record. Two of the items ordered on 5/26/07 were an Esteban coral sun guitar and an Esteban guitar stand and tuner. According to the Pawn Shop Database, on 6/04/07, "Robert Davis", 5057 6th St., NE Washington, DC pawned a musical instrument – guitar/coral sun and Esteban DVD's at Famous Pawn-Wheaton, 11129 Viers Mill Rd., Wheaton, MD. On October 11, 2007 Victim #4 was contacted by law enforcement personnel and reported that he did not open, nor did he authorize anyone, to open an account with the Home Shopping Network in this name. Victim #4 also confirmed that he does not know anyone who resides at 5057 6th Pl., NE, in the District of Columbia.

11. On 10/8/07 at 2334 hours, an individual called a Home Shopping Network call center outside the District of Columbia and set up an account, #750557662, in the name of "Isaiah Codling," and did so by using the actual date of birth and social security number of D.C. (Victim #5) to open a credit card and then listed Isaiah

8

Codling as the account holder. Home Shopping Network records indicate that the person who opened the account and/or ordered items on the account called the Home Shopping Network from telephone number 202-581-5490 and provided a false contact number for Victim #5. On 10/08/07 eight items were ordered on this account from the Home Shopping Network. All eight of these items were to be shipped in the name of "Isaiah Codling", at 2710 29th St, SE Apt B227 Washington, DC 20020. This address is located next door to DAVIS in the Naylor Gardens apartment complex. These items were not shipped due to the Home Shopping Network fraud investigators stopping shipment of the packages. On October 11, 2007 Victim #5 was contacted by law enforcement personnel and reported that she did not open, nor did she authorize anyone, to open an account with the Home Shopping Network in this name. Victim #5 also confirmed that she does not know anyone who resides at 2710 29th St., SE in the District of Columbia.

12. On 8/14/07 the undersigned spoke with W1. W1 and W2 are employees of Naylor Gardens, and are familiar with DAVIS by name and face. W1 stated that it has spoken with DAVIS on a number of occasions. W1 stated that one day in the spring of 2007 DAVIS attempted to retrieve a package from it at the leasing office. W1 stated it would not give the package to DAVIS because it was not in his name. W1 reported that DAVIS became agitated while attempting to retrieve the item. On 10/10/07, W1 indicated that DAVIS still lives in the Naylor Gardens complex with his wife, Latoya Jones-Davis in 2710 29th St, SE, Washington, DC apartment # 228. Affiant has seen the door of the apartment and W2 has advised the apartment door is marked B228. The letter B in front of the 228 indicates the apartment is on the second floor of the building. W2 advised the leasing office records recognize the apartment as being number 228. W2 is familiar with DAVIS and has seen him exit 2710 29th St., SE, Washington, DC apartment # 228 in October 2007. W1 indicated that Latoya Jones-Davis is listed on the lease agreement and has resided in the complex since October 2002. On December 3, 2007, W2 indicated that no person has moved out of this apartment and to the best of its knowledge DAVIS still resides at the apartment with Latoya Jones-Davis.

13. In addition to the Home Shopping Network, the affiant has spoken with fraud protection agents from Swiss Colony, Ginny's, Seventh Avenue, Midnight Velvet, Grand Point, Monroe and Main, Country Door and Tender Fillet stores, which operate as a single entity from the state of Wisconsin. Like the Home Shopping Network, these companies operate call centers and extend credit to customers who establish credit accounts with them. According to fraud protection agents for these companies, at least 25 fraudulent accounts were opened by these companies in the name of the same persons who had fraudulent Home Shopping Network accounts discussed herein. According to the fraud protection agents, a large number of items ordered on these accounts were shipped to addresses in or near Naylor Gardens in the District of Columbia. A number of the items that were shipped and delivered to this area include: household items (detergent, coat racks, bathroom supplies, showerheads, pest repellant, pillows, shelving units, air purifiers, and bedding ), electronics (DVD players, CD players, radios, wireless headphones, televisions, digital cameras, and MP3 players), food products: (chicken wings, burritos, seafood cake, Cajun stew, shrimp scampi, crab legs, and steaks), and clothing, (jackets, and dresses).

### ITEMS TO BE SEIZED IN THE SEARCH

1. Any documents, records, receipts, catalogs, packaging, pictures, orders, correspondence, mail matter, or materials belonging to or relating to purchases, planned purchases, pawned items, returned items, deliveries, attempted deliveries, from any retail establishment, mail-order company, reward program, discount card, or financial institution. The terms document and record as used in this affidavit includes, all such evidence in whatever form and by whatever means they have been created or stored, including any electrical, electronic, or magnetic form (such as any information on an electronic or magnetic storage device, including floppy diskettes, hard disks, ZIP disks, USB drives, memory sticks, CD-ROMs, optical discs, backup tapes, printer buffers, smart cards, memory

calculators, pagers, personal digital assistants such as Palm Pilot computers, as well as printouts or readouts from any magnetic storage device); any handmade form (such as writing, drawing, painting); any mechanical form (such as printing or typing); and any photographic form (such as microfilm, microfiche, prints, slides, negatives, videotapes, motion pictures, photocopies).

2. Any documents, records, checks, receipts, mail matter, financial statements, packaging, banking cards, credit cards, loan documents, extensions of credit, financial applications, or materials containing the name or personal identifying information of any person other than DAVIS or Latoya Jones-Davis.

3. All land-line phones, phone books (electronic or otherwise), calendars (electronic or otherwise), cellular phones, and answering machines, including electronic media stored therein, including, but not limited to, messages, address books, text messages, task reminders, calendars, recent calls, photographs, and redial information.

4. All phone records, phone bills, and all documents related to the payment of such bills, including, but not limited to, mail matter, correspondence, checks, money orders, receipts, and past-due notices.

5. All checks, checkbooks, diaries, receipts, mail matter, bank records, bank statements, ATM receipts, deposit receipts, withdrawal receipts, receipts of money transfers, credit card receipts, credit card statements, financial documents, collection notices, investment records, employment records, income records, tax records, personal identification cards, credit cards, debit cards, cash cards, phone cards, delivery packages (opened and unopened), shipping records, shipping correspondence, storage records, safety deposit box records, keys to storage lockers or security deposit boxes or post office boxes (including records of combination locks), and records of rented storage facilities or post office boxes. This includes all records containing information recording DAVIS' schedule or travel from 2002 to the present.

6. All identification records belonging to DAVIS, Victim #1, Victim #2, Victim #3, Victim #4, Victim #5, or any other person not residing at the premises, including, but not limited to, driver's licenses, credit cards, library cards, voter identification cards, mail matter, photo identification, badges, or other identification bearing DAVIS' name or photo.

7. Any documents, records, letterhead, receipts, agreements, catalogs, policies, mail matter, email, or other correspondence containing information related to any entity associated with Swiss Colony, Ginny's, Seventh Avenue, Midnight Velvet, Grand Point, Monroe and Main, Country Door and Tender Fillet stores, the Home Shopping Network, or pawn shops.

8. Any and all instruments that would assist in the furtherance of this criminal enterprise of fraud, and theft. This would include any and all records, notes, emails, documents related to the aforementioned crimes which include but are not limited to information and/or data stored in the form of magnetic or electronic coding on computer media or on media capable of being read by a computer or with the aid of computer related equipment. This media includes, but is not limited to computers, diskettes, hard disks, thumb drives, flash drives, SD cards, removable cartridges, removable drives, system RAM, tapes, laser and compact disks, videocassettes, and any other media, which is capable of storing magnetic, optical, and/or binary coding. The media also includes electronic devices, which are capable of analyzing, creating, converting, receiving, or transmitting electronic and/or magnetic computer impulses or data. These devices include, but are not limited to computers, computer components, computer peripherals, word processing equipment, modems, monitors, printers, plotters, optical scanners, encryption circuit boards, hard drives, electronic data organizers, and other computer related electronic devices. It also includes instructions, passwords, or programs stored in the form of electronic or magnetic media, which are capable of being interpreted by a computer, or related components.

9. Items to be seized could also include, but would not be limited to: operating systems, passwords, application software, utility programs, compilers, interpreters, and any other programs or software used to communicate with computer hardware or peripherals, either  directly or indirectly via computer hardware or peripherals, either directly or indirectly, via telephone lines, radio signals, or other means of transmission; Written or printed material, which provides instructions or examples of the operation of a computer system, computer software, and/or any, related device; Electronic equipment such as telex machines, facsimile machines, telephone answering machines, and related manuals used to generate, transfer, record, and/or store computer-read or generated information; computer software, tapes, disks, audiotapes, and the contents therein containing the information generated by the aforementioned electronic equipment; and Address and or telephone books, Rolodex indices and any papers reflecting names, addresses, telephone numbers and/or pager numbers.

10. Any fruits of fraud or theft, including, but not limited to, cash, drugs, and any packages, clothing, jewelry, items, furniture, shoes, electronics, or materials that may have been ordered, purchased or obtained from Swiss Colony, Ginny's, Seventh Avenue, Midnight Velvet, Grand Point, Monroe and Main, Country Door and Tender Fillet stores, the Home Shopping Network, or a pawn shop, including but not limited to vacuum cleaners, jewelry, necklaces, bracelets, watches, tools, guitars and music equipment, computers, air purifiers, DVD players, exercise equipment, household items (e.g., detergent, coat racks, bathroom supplies, showerheads, pest repellant, pillows, shelving units, air purifiers, and bedding ), electronics (e.g., DVD players, CD players, radios, wireless headphones, televisions, digital cameras, and MP3 players), food products (e.g., chicken wings, burritos, seafood cake, Cajun stew, shrimp scampi, crab legs, and steaks), and clothing (jackets, and dresses).

11. Any documents, materials, goods, or items likely evidencing wire fraud, theft, identity theft, or which are the fruit of any criminal activity, including, but not

limited to, records of goods received or ordered, recently delivered merchandise in the name of third parties found within the home, lists containing personal identifying information of persons other than DAVIS, fake or fraudulent identification cards and material, shredding equipment, equipment that can be used to create false identifications (i.e. lamination machines, printers, laser copiers, copying software), equipment evidencing computer hacking, and forged identification cards.  This would also include retail items, materials, or goods which are present in amounts or sizes which are not for mere personal use and suggest an intent to distribute said items for profit (i.e. multiple vacuum cleaners, toasters, computers, or electronic equipment).

_____         _____

**Special Agent Daniel Sperco**              **Assistant United States Attorney**
**United States Secret Service**

Subscribed and sworn to before me this \_\_\_\_\_ day of _____, 2007.

_____
**United States Magistrate Judge**